Pat H. BAKER, Individually and as Independent Executor of the Estate of Lola B. Baker, Deceased, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. SA74CA63.

United States District Court, W. D. Texas, San Antonio Division.

June 3, 1975.

Robert I. White, Chamberlain, Hrdlicka, White & Waters, Houston, Tex., for plaintiffs.

John E. Clark, U. S. Atty., San Antonio, Tex., Peter J. Grabicki, Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SPEARS, Chief Judge.

This case was tried to the Court without a jury on May 20, 1975 and upon consideration of the pleadings, stipulations, testimony, exhibits and arguments of counsel, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. This is a civil action brought by Plaintiffs Leslie G. and Joyce Baker for recovery of income tax paid for 1967 in the amount of $12,380.89 plus assessed

and statutory interest thereon; by Plaintiff Pat H. Baker, individually, and as Independent Executor of the Estate of Lola B. Baker, deceased, for recovery of income tax paid for 1967 in the amount of $9,295.55 plus assessed and statutory interest thereon; and by Plaintiffs Glenn H. and Ola M. Baker for recovery of income tax paid for 1967 in the amount of $9,284.72 plus assessed and statutory interest thereon. All of the refunds claimed by the six Plaintiffs are attributable to an assessment of income tax made in the form of "investment credit recapture" by the Internal Revenue Service because of Plaintiffs' alleged early disposition of assets on which they were allowed by statute to and did claim investment credit. The wives of each male Plaintiff and the Estate of Pat H. Baker's deceased wife are involved in the case by reason of the filing of joint income tax returns.

2. From the late 1940's until December of 1967, Pat Baker and Sons (a Texas general partnership, hereinafter "Partnership") doing business under the name "Pat Baker Co." was engaged in (1) construction contracting activities, (2) trucking activities and (3) activities incident to purchasing and maintaining its investment in equipment and vehicles used in the construction contracting and trucking activities. Partnership's activities were headquartered in the towns of Kingsbury and Charlotte, Texas; its business was done in the entire south central Texas area. Partnership's construction contracting activities encompassed obtaining and performing a variety of contracts such as for building roads, streets, parking lots and strip mining. Its trucking activities were for the most part conducted under a Texas Railroad Commission permit and included hauling heavy equipment on a contract basis for most of the major oil companies. Partnership by December of 1967 had invested over $800,000 in equipment used in its construction and trucking activities; in December of 1967 the equipment had a value of about $1,400,000.

3. Throughout the 1960's Partnership's business activities were managed by Leslie Baker; Leslie's brother, Glenn, was engaged full time as a foreman in Partnership's activities, and his father, Pat, was engaged part time in Partnership's activities. Pat Baker devoted the bulk of his time to his duties as County Commissioner and later County Judge in Guadalupe County, Texas. At all times here relevant, the partners owned the Partnership's assets and shared in its profits and losses: Leslie G. Baker, 40%, Glenn H. Baker, 30%, and Pat H. Baker, 30%.

4. On December 20, 1967, three Texas corporations were formed, Balcones Leasing, Inc. ("Leasing"), Pat Baker Trucking and Services, Inc. ("Trucking") and Pat Baker Construction, Inc. ("Construction"). There were two reasons for creating the three corporations and later transferring substantially all of Partnership's assets to the corporations: first, the partners desired to limit their personal liability by transferring all of the activities previously performed by Partnership to the three corporations; second, the partners for management purposes desired to formally divide Partnership's activities into its three parts so that they could determine the source and amount of the profits attributable to construction activities, trucking activities and investment in and management of equipment. The capital stock of each of the corporations, consisting of common stock, was issued to the partners in exchange for Partnership's assets in proportion to their interests in Partnership.

5. The assets transferred from Partnership to Leasing in exchange for stock were $1,000 cash and all vehicles, bulldozers, and engine propelled equipment used in the business having a total original cost of $826,920.70. These assets had a value of about $1,400,000 when they were transferred to Leasing. The

Partnership assets transferred to Trucking in exchange for stock were $1,000 cash, a Texas Railroad Commission permit, radios, shop equipment and office furniture and equipment having a total original cost of $20,926.58. These assets had a value of about $20,000 when they were transferred to Trucking. Construction received $1,000 cash from Partnership for which it issued its capital stock.

6. After the transfers of assets to the corporations were consummated, Partnership retained the balance of its cash, a 2.1 acre tract of land that cost $2,600 (and in December of 1967 had a value of about $3,500), and miscellaneous small buildings having an original cost of $20,021.40 and a value in December of 1967 of $20,000 to $25,000. After the transfers to Leasing, Trucking, and Construction, ownership in Partnership remained unchanged and the capital interests in the Partnership were appropriately diminished by reason of the transfers to the three corporations. The transfers of the assets to the corporations in exchange for stock were tax free under Section 351 of the Internal Revenue Code of 1954, 26 U.S.C. 1964 ed. Section 351.

7. After December 20, 1967, Leasing leased its assets only to Trucking or Construction and to no other persons or entities. After December 20, 1967, Construction continued the construction contracting activities of Partnership for the same customers and with the same workers and management. After December 20, 1967, Trucking continued the trucking activities of Partnership for the same customers and with the same workers and management. After December 20, 1967, Partnership leased its 2.1 acre tract and the improvements thereon to Trucking and Construction. After the transactions of December 20, 1967, the same people who owned Partnership owned the corporations in the same ratios. The corporations conducted business using one name, "Pat Baker Co.", the same name that had been used for many years by Partnership. All vehicles and equipment remained labeled with that name and the places of business continued to be designated by a "Pat Baker Co." sign. After December 20, 1967 the same essential business enterprise that had been conducted by Partnership was conducted and continued (unchanged except as to form) by the three corporations.

8. When and as the assets (transferred on December 20, 1967 to Leasing and Trucking) were originally purchased by Partnership, the partners were entitled to and claimed investment credit. As a result of the examination by the Internal Revenue Service of the 1967 individual income tax returns of the partners in Partnership, the Internal Revenue Service assessed additional taxes against such partners (and their wives) taking the position that the transfers of assets to Leasing and Trucking gave rise to recapture of the investment credit previously allowed by statute and claimed by the partners.

9. After paying the additional taxes assessed for 1967, the partners in Partnership, together with their respective wives, filed timely claims for refund of such taxes with the Internal Revenue Service Center in Austin, Texas, in which they took the position that the investment credit recapture statute and regulations were not triggered by the transfer of the assets from Partnership to Leasing and Trucking. In due course, the Internal Revenue Service denied the claims for refund and the partners and their wives then timely filed this suit for refund.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and of the person pursuant to 28 U.S.C. Sections 1340 and 1346(a)(1).

2. Prior to December 20, 1967, Sections 38 and 46 of the Internal Revenue

Code of 1954 [1] allowed a credit against income tax of 8% of the investment in certain types of depreciable property described in Section 46(c). An essential requirement of this investment credit is that purchased assets have useful lives, as prescribed in that subsection, of 8 years or more (for full investment credit) and between 4 to 7 years (for partial investment credit). In the event of early disposition of the asset with respect to which investment credit was allowed, under Section 47(a) there is a recapture of that previously allowed investment credit. The recapture rules of Section 47(a) are limited by the exceptions contained in Section 47(b), which provides as follows:

> Subsection (a) shall not apply to—
>
> (1) a transfer by reason of death, or
>
> (2) a transaction to which section 381(a) applies.

For purposes of subsection (a), property shall not be treated as ceasing to be section 38 property with respect to the taxpayer by reason of a mere change in the form of conducting the trade or business so long as the property is retained in such trade or business as section 38 property and the taxpayer retains a substantial interest in such trade or business.

3. The issue presented in this case is whether the transfer of Partnership's business and substantially all of the assets used in Partnership's business to Leasing, Trucking and Construction is an early disposition within the meaning of Section 47(a), triggering investment credit recapture, as the government contends, or whether it is a "mere change in the form of conducting * * * business" as prescribed by Section 47(b) and is thus within the statutory exceptions to investment credit recapture as Plaintiffs contend.

4. This Court concludes that the transactions that occurred among Partnership, Leasing, Trucking and Construction on December 20, 1967, were a "mere change in the form of conducting * * * business" as prescribed in Section 47(b) and thus there is no recapture of the investment credit theretofore claimed by Plaintiffs. This conclusion is reached for the following reasons:

a. The language in Section 47(b) precludes investment credit recapture in two situations here relevant: those transactions to which Section 381(a) applies and those transactions involving a mere change in the form of conducting business so long as the property is retained in the business and the taxpayer retains a substantial interest in the business. Examination of the transactions to which Section 381(a) applies leads to the conclusion that Congress did not intend for the investment credit recapture provision to apply to corporate reorganizations described in Section 368(a)(1)(A), (C), (F) and those (D) reorganizations described in Section 354(b). The Court of Appeals for the Fifth Circuit in *Home Construction Corp. v. United States*, 439 F.2d 1165 (1971), has stated that a Section 368(a)(1)(F) reorganization occurs when 123 corporations controlled by the same person are merged under state law with a resulting shift of title to all the business assets and activities to one corporation. In reaching this conclusion the Fifth Circuit stated (*Id.* at 1170–1172):

> In summary, we hold that *Davant* [*Davant v. C. I. R.*, 366 F.2d 874 (5th Cir. 1966)] establishes criteria which adequately define when a reorganization qualifies as a mere change in form, identity, or place of incorporation. These include identity of shareholders and their proprietary interests, unimpaired continuity of the essential business enterprise and a new

1. Parallel citations to the 1954 Internal Revenue Code are found in 26 U.S.C., 1964 ed. under the same section number. Hereinafter, all citations of section numbers will be to the 1954 Internal Revenue Code.

form which is the alter ego of the old. While the instant reorganization was more complex, it still meets all of the criteria established by *Davant*. It therefore [is] an F reorganization. * * * There is no substantive difference between taxpayer's pre-merger operation consisting of 123 closely held affiliated corporations and its post-merger operation consisting of conduct of the same business with the same assets and ownership through numerous divisions of a single corporation. This situation meets the ultimate benchmark by which to gauge an F reorganization—continuity in all matters of business substance.

The foregoing rule has been consistently followed by the other Courts of Appeals and by the Court of Claims. See, *e. g.*, *Performance Systems, Inc. v. United States*, 501 F.2d 1338 (C.A. 6, 1974); *Stauffer v. Commissioner*, 403 F.2d 611 (C.A. 9, 1968); *Associated Machine v. Commissioner*, 403 F.2d 622 (C.A. 9, 1968); and *Movielab, Inc. v. United States*, 494 F.2d 693 (Ct.Cl., 1974). In *Movielab, Inc.*, the Court of Claims stated that a change of form "F" reorganization always occurs when the proprietary interests of the transferor and transferee are identical and the essential business enterprises of the various companies are continued uninterrupted.

b. Pursuant to the reference to Section 381(a) transactions in Section 47(b), investment credit allowed by statute to any of the corporations involved in *Home Construction Corp., Performance Systems, Inc., Stauffer, Associated Machine* and *Movielab, Inc.* would not be recaptured merely because of the shifts in title to the property incident to the reorganizations involved in those cases.

■ c. The judicial construction of the "mere change of form" language in Section 368(a)(1)(F), particularly that of our circuit in *Home Construction Corp.*, must be considered in construing the following language in Section 47(b):

For purposes of subsection (a), property shall not be treated as ceasing to be section 38 property with respect to the taxpayer by reason of a *mere change in the form of conducting the trade or business* so long as the property is retained in such trade or business as section 38 property and the taxpayer retains a substantial interest in such trade or business. (Emphasis added.)

The foregoing language of Section 47(b) is almost verbatim the language of the Fifth Circuit in *Home Construction Corp.* and this Court concludes that in circumstances where, as here, the proprietary interests of the former partners are continued in identical ratios in the successor corporations, and such corporations continue unimpaired the essential business enterprise previously conducted by the partnership, the requirements of Section 47(b) are satisfied. Accordingly in such circumstances no investment credit is recaptured upon transfer of partnership assets to the corporations.

5. The government's essential position in this case is that under Section 47(b), as construed by the regulations promulgated thereunder, one partnership business cannot, without investment credit recapture, be divided into three corporations albeit that these three corporations continue to conduct the same essential business enterprise previously conducted by the partnership and that the capital stock in these three corporations is owned by the former partnerships in ratios identical to their former partnership ratios. The government's position, it states, is supported by Treasury Regulations on Income Tax (1954 Code) Section 1.47–3(f)(1), 26 C.F.R. Section 1.47–3(f)(1) which provides:

(1) General rule.

(i) Notwithstanding the provisions of § 1.47–2, relating to "disposition" and "cessation", paragraph (a) of § 1.47–1 shall not apply to section 38 property which is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the

estimated useful life which was taken into account in computing the taxpayer's qualified investment by reason of a mere change in the form of conducting the trade or business in which such section 38 property is used provided that the conditions set forth in subdivision (ii) of this subparagraph are satisfied.

(ii) The conditions referred to in subdivision (i) of this subparagraph are as follows:

(a) The section 38 property described in subdivision (i) of this subparagraph is retained as section 38 property in the same trade or business,

(b) The transferor (or in a case where the transferor is a partnership, estate, trust, or electing small business corporation, the partner, beneficiary, or shareholder) of such section 38 property retains a substantial interest in such trade or business,

(c) Substantially all the assets (whether or not section 38 property) necessary to operate such trade or business are transferred to the transferee to whom such section 38 property is transferred, and

(d) The basis of such section 38 property in the hands of the transferee is determined in whole or in part by reference to the basis of such section 38 property in the hands of the transferor.

\* \* \* \* \* \*

First, the government points to the words "the transferee" used in subparagraph (ii)(c) and (d) in the foregoing regulation, and argues that the use of singular articles ("the") and singular nouns ("transferee") dictates a conclusion that if, as here, two or three transferees are involved there can be no "mere change in the form of conducting the trade or business". Second the government argues that where, as here, there are three corporate transferees, it

follows that these transferees are conducting three businesses and thus violate the restrictions not only of Section 1.47–3(f)(1)(ii)(a) of the Regulations but also the explicit provisions of Section 47(b) itself.

6. In the facts and circumstances of this case, the government's arguments are not taken for the following reasons, among others:

a. The Treasury Regulations on Income Tax (1954 Code) Section 1.47–3(e) deals with situations where investment credit recapture is excused (under Section 47(b)) because of the application of Section 381(a). That entire Regulation subsection deals with a singular "transferor" in a corporate combination context. Despite the use of the singular article and the singular noun, the law is clear that the combination of numerous "transferors" and the assets of such transferors may occur without investment credit recapture where there is an identity of shareholders and their proprietary interests together with an unimpaired continuity of the essential business enterprise. See, *Home Construction Corp. v. United States, supra; Performance Systems Inc. v. United States, supra; Stauffer v. Commissioner, supra; Associated Machine v. Commissioner, supra;* and *Movielab, Inc. v. United States, supra.* The use of singular articles and nouns both in Regulations 1.47–3(e) and (f)(1)(ii) is not and cannot be construed as a restriction dictating the application of those Regulations only to one transferor (in the case of Section 381(a) situations) or one transferee (in the case of change in the form of doing business situations).

b. Section 47(b) uses the words "change in the form of conducting the trade or business". Such statutory language, which also appears in the Treasury Regulation Section 1.47–3(f)(1)(ii)(b) does not create a mechanical formula. That is to say if, as here, one partnership is divided into three corporations with the three corporations conducting the same essential

business enterprise that was previously conducted by the partnership, this Court is of the opinion that there is a change in the form of conducting the trade or business. For the same reasons the number of transferors in the "F" reorganization cases is not controlling,[2] the number of transferees is not controlling. What is controlling is the factual determination of whether the same essential economic enterprise is conducted by the transferee or transferees as was conducted by the transferor.

c. In litigation and in its ruling process the Internal Revenue Service has implicitly taken the position that the number of transferees is not determinative in investment credit recapture matters. In *Purvis v. United States,* 73–1 USTC ¶ 9157 (N.D.Ga.1972) the facts were in all principal respects identical to those in the instant case. There the government conceded that there was no investment credit recapture upon the transfer of assets and activities from the partnership to two corporations and contended that a sale three years later by the partners of their stock in one of the corporations was an early disposition within the meaning of Section 47(a). The court in *Purvis* concluded that the transfer of the assets and activities from the partnership to the two corporations in 1963 was a mere change in the form of doing business. In Revenue Ruling 74–101, 1974–1 Cum.Bull. 7 the Internal Revenue Service ruled implicitly that the division of one enterprise that conducted three activities into three corporations did not trigger investment credit recapture because of the multiple transferees; rather the ruling stated that investment credit was recaptured only because there was a distribution of the stock in the transferees by the corporate transferor to its shareholders, and therefore a termination of ownership of the two corporations' stock in violation of Section 47(b).

■ The retention by the partnership of the balance of its cash, a 2.1 acre tract of land that cost $2,600 (and in December of 1967 had a value of about $3,500), and miscellaneous small buildings having an original cost of $20,021.-40 and a value in December of 1967 of $20,000 to $25,000, when contrasted with the total value of the assets transferred to the three corporations, could hardly serve to defeat the requirement that the taxpayer retain "a substantial interest in such trade or business".

d. The concept applied by this Court in this case of continuity of the essential business enterprise whether in the form of one or multiple transferees finds support in the multiple corporation area of tax law. For example, reference is made to the Joint Committee Staff Summary of Provisions of the Revenue Act of 1951, 1951–2 Cum.Bull. 287, where the enactment of the present Section 1551 is discussed:

> This provision of the bill does not prohibit or discourage expansion of an existing business accompanied by the formation of new corporations, as distinguished from the mere split-up of an existing business. *Id.* at 303.

(*Id.*, at 506):

> Under existing law the $25,000 corporate surtax exemption and the $25,000 minimum credit under the excess profits tax are available to each member of a group or chain of related corporations. It has been claimed that this treatment confers an unwarranted tax advantage on businesses carried out by means of a series of corporations, rather than a single corporation, and sets up an incentive for the artificial splitting-up of corporations. * * *
>
> *   *   *   *   *   *

(*Id.*, at 506–07):

> Many businesses were organized in the form of multiple corporations long before the present surtax exemption and minimum excess profits tax credit were introduced. A business may be required to incorporate separately in

---

2. See the cases cited at page 1147, *supra.*

each State in which it carries on its activities. Furthermore, State laws sometimes prohibit the chartering of a corporation for more than one business purpose. A related corporation frequently will be formed for the purpose of limiting liability with respect to the development of a new and risky enterprise. * * *

■ e. This Court concludes that the exception to investment credit recapture provided in Section 47(b) does not depend upon whether there is one or multiple transferors or whether there is one or multiple transferees. Rather the essence of the inquiry is whether there is an unimpaired continuity of the essential business enterprise in a new form[3] and whether the former owners of proprietary interests continue as such. Where, as here, both circumstances exist, Section 47(b) applies and there is no investment credit recapture. This is no more than a "change in the form" of conducting business.[4]

■ 7. In this case this Court does not intend to and does not hold that Treasury Regulation Section 1.47–3(f)(1)(ii) is invalid. Of course such a holding is possible whenever a regulation explicitly adds restrictions that are not contained in the statute it interprets. *United States v. Marett*, 325 F. 2d 28 (C.A. 5, 1963); *Brooks v. United States*, 473 F.2d 829 (C.A. 6, 1973). It is clear that taxes cannot be exacted by regulation; only the statute can do that. *Commissioner v. Acker*, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959). Rather

in this case the Court holds that the government's interpretation of Regulation Section 1.47–3(f)(1)(ii) is erroneous as the government proposes to apply it to the facts in this case. The Court concludes that the change in the form of doing business involved in the instant case is the type described in such regulation and accordingly that investment credit is not recaptured.

8. For the foregoing reasons Plaintiffs are entitled to judgment and counsel are instructed to prepare and submit an appropriate judgment, consistent with these findings and conclusions, within ten (10) days.

---

3. In the instant case although in form there are three corporations conducting affairs that were conducted by one partnership, in substance the corporations have continued essentially the identical enterprise.

4. The predecessor to Section 351 was enacted to preclude taxation of the transactions covered by that Section because although there was a change in the form there was no change in the substance of the beneficial interests. *American Compress & Warehouse Co. v. Bender*, 70 F.2d 655, 657 (C. A.5, 1934) (court states that the tax free corporate organization provision (Section

351) deals with a transaction where the relation of one or more persons to property is changed so that upon their ceasing to be owners of the property they come into control of a corporation upon the latter becoming owner of the property; statute is stated to evidence "a recognition that the transaction therein described effects a change in form, but not substance, of the beneficial interests of the transferors in the transferred property"); see also, *Portland Oil Co. v. Commissioner*, 109 F.2d 479, 488 (C.A.1, 1940); *Barker v. United States*, 200 F.2d 223, 228 (C.A.9, 1952).