ERVAL J. BORGIC AND BETTY BORGIC, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 288-84.     Filed April 14, 1986.

*James O. Beavers*, for the petitioners.
*Michael W. Bitner*, for the respondent.

PARR, *Judge*: * Respondent determined a deficiency in petitioners' 1979 Federal income tax return in the amount of $12,765.04. The sole issue for decision is whether petitioners must recapture investment tax credits previously taken for certain farm implements and machinery upon the transfer of such property to petitioners' wholly owned corporation.

### FINDINGS OF FACT

This case was submitted to the Court without trial pursuant to Rule 122.[1] The facts have been stipulated and are so found. The stipulation of facts and related exhibits are incorporated herein by this reference.

At the time of filing the petition in this case, petitioners, husband and wife, resided in Nokomis, Illinois. Petitioners timely filed a joint 1979 Federal income tax return on April 10, 1980.

Prior to November 15, 1974, petitioners operated a livestock and grain farm in the form of a sole proprietorship. The assets of the farm consisted of grain, livestock, real property, farm implements, machinery, buildings, and cash. On November 15, 1974, petitioners formed a corporation known as Borgic Farms, Inc. (hereinafter the corporation). Following this incorporation, the corporation operated the farm previously operated by petitioners, and petitioners

---

*By order of the Chief Judge, this case was reassigned to Judge Parr for opinion and decision.

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

became employees of the corporation. Petitioners received wages from such employment during the years 1975[2] through 1979 in the following amounts:

| Year | Petitioner | Amount |
|------|-----------|--------|
| 1975 | Erval J. Borgic | $12,000.00 |
|      | Betty Borgic | 3,900.00 |
| 1976 | Erval J. Borgic | 13,200.00 |
|      | Betty Borgic | 4,801.18 |
| 1977 | Erval J. Borgic | 16,800.00 |
|      | Betty Borgic | 3,600.00 |
| 1978 | Erval J. Borgic | 13,200.00 |
|      | Betty Borgic | 3,300.00 |
| 1979 | Erval J. Borgic | 12,000.00 |
|      | Betty Borgic | 3,300.00 |

Upon formation of the corporation, petitioners transferred to the corporation all grain and livestock inventories previously used by them in operating the farm, plus cash, in exchange for 1,000 shares of voting common stock in the corporation. Petitioner Erval J. Borgic received 750 of these shares, while petitioner Betty Borgic received 250.

In addition to transferring the grain and livestock inventories to the corporation, petitioners entered into a lease agreement with the corporation whereby the real property, farm implements, machinery, and buildings owned by petitioners and previously used by them in the operation of the farm, plus any farm implements and machinery thereafter acquired by petitioners, were leased to the corporation. Thereafter, the corporation used this property, both real and personal, in the operation of the farm. Pursuant to the lease agreement, the corporation paid the following amounts of rent to petitioners for this property during the years 1975[3] through 1979:

| Year | Amount |
|------|--------|
| 1975 | $64,085.00 |
| 1976 | 88,962.00 |
| 1977 | 109,438.00 |
| 1978 | 108,934.48 |
| 1979 | 55,786.00 |

---

[2]The parties have stipulated that the amount of wages paid to petitioners during 1974 is not readily ascertainable.

[3]The parties have stipulated that the amount of rent paid in 1974 is not readily ascertainable.

The farm implements and machinery which were owned by petitioners on November 15, 1974, or acquired by them subsequent to that date, were assets qualifying for the investment credit under section 38 and petitioners claimed investment credits for this property. The following table lists the farm implements and machinery which were leased to the corporation[4] pursuant to the lease agreement:

| Item | Date acquired | Cost | Estimated useful life | Investment credit claimed |
|---|---|---|---|---|
| Grain dryer | 3/1/73 | $426 | 7 | $29.82 |
| Crop sprayer | 5/1/73 | 823 | 7 | 57.61 |
| Auger-Mayer | 8/1/73 | 813 | 7 | 56.91 |
| Chev. 2 ton pickup | 11/1/73 | 7,455 | 7 | 521.85 |
| Hog equip.-IHC | 11/1/73 | 664 | 7 | 46.48 |
| Tractor-IHC | 12/1/73 | 7,245 | 7 | 507.15 |
| Elec. equip.-fan | 3/1/74 | 397 | 7 | 27.79 |
| Hog. equip.-rotary | 3/1/74 | 818 | 7 | 57.26 |
| Hog. equip.-vent | 3/1/74 | 844 | 7 | 59.08 |
| Grain dryer | 4/1/74 | 3,817 | 7 | 267.19 |
| Fuel tank | 8/1/74 | 283 | 7 | 19.81 |
| Wagon unloader | 8/1/74 | 1,948 | 7 | 136.36 |
| Harrow-26' | 12/1/74 | 1,100 | 7 | 77.00 |
| Rotary mower | 12/1/74 | 848 | 7 | 59.36 |
| Field mower | 12/1/74 | 1,132 | 7 | 79.24 |
| Hog equip. | 3/1/75 | 2,100 | 7 | 210.00 |
| Hog equip. | 4/1/75 | 735 | 7 | 73.50 |
| Rotary hoe | 4/1/75 | 2,032 | 7 | 203.20 |
| Tractor | 9/1/75 | 14,000 | 7 | 1,400.00 |
| Farm mower | 9/1/75 | 1,995 | 7 | 199.50 |
| Tractor | 12/1/75 | 22,563 | 7 | 2,256.30 |
| Field cultivator | 12/1/75 | 4,200 | 7 | 420.00 |
| Plow | 12/1/75 | 5,458 | 7 | 545.80 |
| Grader blade | 12/1/75 | 840 | 7 | 84.00 |
| Truck top | 9/1/76 | 999 | 5 | 66.60 |
| 3/4 Ton truck | 12/1/76 | 6,817 | 7 | 681.70 |
| Water system | 12/1/76 | 671 | 7 | 67.10 |
| Combine | 12/1/76 | 24,300 | 7 | 2,430.00 |
| 35'8" Kewanee | 12/1/76 | 1,312 | 7 | 131.20 |
| 20' Grain head | 12/1/76 | 4,788 | 7 | 478.80 |
| Snow blower | 12/1/77 | 1,132 | 7 | 113.20 |
| Van | 8/1/78 | 3,272 | 7 | 327.20 |
| Auger | 9/1/78 | 1,907 | 7 | 190.70 |
| Chisel plow | 9/1/78 | 2,888 | 7 | 288.80 |
| Honey wagon | 11/1/78 | 10,804 | 7 | 1,080.40 |

[4]The table omits certain other items of farm implements and machinery which were also leased to the corporation, but are not at issue in this case.

| | | | | |
|---|---|---|---|---|
| Corn planter | 12/1/78 | $17,133 | 7 | $1,713.30 |
| Cultivator | 12/1/78 | 6,725 | 7 | 672.50 |

The above-listed farm implements and machinery were leased, rather than transferred, to the corporation by petitioners due to the existence of an Illinois personal property tax which was then assessed against all corporate personal property. That tax was abolished on January 1, 1979. On that date, petitioners transferred to the corporation all of the items of farm implements and machinery listed above, as well as some of the buildings and some of the land they were then leasing to the corporation for use in the farming business. The assets transferred had an undepreciated cost at the time of such transfer of $345,470. In exchange for contributing these assets, petitioners received from the corporation 660 shares of voting common stock, worth $117,513., and debentures totaling $227,957.

Respondent, in his notice of deficiency, determined that petitioners were liable for investment tax credit recapture upon the January 1, 1979, transfer of the farm implements and machinery to the corporation. Respondent determined the amount to be $12,765.04,[5] as follows:

| Item | Date acquired | Investment credit subject to recapture |
|---|---|---|
| Grain dryer | 3/1/73 | $9.94 |
| Crop sprayer | 5/1/73 | 19.20 |
| Auger-Mayer | 8/1/73 | 18.97 |
| Chev. 2-ton pickup | 11/1/73 | 173.95 |
| Hog equip. - IHC | 11/1/73 | 15.49 |
| Tractor - IHC | 12/1/73 | 169.05 |
| Elec. equip. - fan | 3/1/74 | 18.53 |
| Hog equip. - rotary | 3/1/74 | 38.17 |
| Hog equip. - vent | 3/1/74 | 39.39 |
| Grain dryer | 4/1/74 | 178.13 |
| Fuel tank | 8/1/74 | 13.21 |
| Wagon unloader | 8/1/74 | 90.91 |
| Harrow-26' | 12/1/74 | 51.33 |
| Rotary mower | 12/1/74 | 39.57 |
| Field mower | 12/1/74 | 52.83 |
| Hog equip. | 3/1/75 | 140.00 |
| Hog equip. | 4/1/75 | 49.00 |
| Rotary hoe | 4/1/75 | 135.47 |

[5]This amount is in addition to the investment credit recapture already reported by petitioners for the year 1979, in the amount of $1,249, resulting from the disposition of other items of tangible personal property for which investment tax credits had been claimed.

| Item | Date acquired | Investment credit subject to recapture |
|---|---|---|
| Tractor | 9/1/75 | $933.33 |
| Farm mower | 9/1/75 | 133.00 |
| Tractor | 12/1/75 | 1,504.20 |
| Field cultivator | 12/1/75 | 280.00 |
| Plow | 12/1/75 | 363.87 |
| Grader blade | 12/1/75 | 56.00 |
| Truck top | 9/1/76 | 66.60 |
| 3/4-ton truck | 12/1/76 | 681.70 |
| Water system | 12/1/76 | 67.10 |
| Combine | 12/1/76 | 2,430.00 |
| 35'8" Kewanee | 12/1/76 | 131.20 |
| 20' grain head | 12/1/76 | 478.80 |
| Snow blower | 12/1/77 | 113.20 |
| Van | 8/1/78 | 327.20 |
| Auger | 9/1/78 | 190.70 |
| Chisel plow | 9/1/78 | 288.80 |
| Honey wagon | 11/1/78 | 1,080.40 |
| Corn planter | 12/1/78 | 1,713.30 |
| Cultivator | 12/1/78 | 672.50 |
| Total | | 12,765.04 |

In his notice of deficiency, respondent stated that the above investment tax credits were subject to recapture because the property on which the credit was taken had ceased to qualify as section 38 property.

## OPINION

Respondent's determination that a portion of the investment credits claimed on the property transferred to the corporation is subject to recapture is based on section 47(a)(1), which provides that—

If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property.

Respondent's position is that since the farm implements

and machinery transferred to the corporation on January 1, 1979, ceased to be section 38 property with respect to the petitioners prior to the close of their estimated useful lives, the recapture provisions are triggered. Petitioners concede that if section 47(a)(1) applies, respondent has computed the amount of recapture correctly. Petitioners argue, however, that they fall under the exception to section 47(a)(1) found in section 47(b); that is, that a mere change in form of conducting a trade or business occurred on January 1, 1979, so that no recapture of investment credit is required.

Section 47(b), in pertinent part, reads as follows:

For purposes of subsection (a), property shall not be treated as ceasing to be section 38 property with respect to the taxpayer by reason of a mere change in the form of conducting the trade or business so long as the property is retained in such trade or business as section 38 property and the taxpayer retains a substantial interest in such trade or business.

Section 1.47-3(f)(1)(ii), Income Tax Regs., sets forth the following requirements for a disposition to qualify as a "mere change in the form of conducting a trade or business":

(a) The section 38 property * * * is retained as section 38 property in the same trade or business,

(b) The transferor * * * of such section 38 property retains a substantial interest in such trade or business,

(c) Substantially all the assets (whether or not section 38 property) necessary to operate such trade or business are transferred to the transferee to whom such section 38 property is transferred, and

(d) The basis of such section 38 property in the hands of the transferee is determined in whole or in part by reference to the basis of such section 38 property in the hands of the transferor.

All four of the conditions set forth in the regulation must be satisfied in order to find that section 47(b) applies to a disposition. *Long v. United States*, 652 F.2d 675, 677 (6th Cir. 1981); *Ramm v. Commissioner*, 72 T.C. 671, 674 (1979). Respondent concedes that subdivisions (c) and (d) of the regulation are satisfied here, and that, in all likelihood, petitioner would be found to satisfy subdivision (b). We hold that under the facts, the requirement of subdivision (b) of the regulation has been met. It is subdivision (a) which is at issue in this case. Petitioner argues that the farm implements and machinery were used in the farming business by

petitioners prior to the transfer, and were retained in the same business by the corporation following the transfer. Respondent's position is that the farm implements and machinery were used by petitioners in their leasing activities prior to the transfer, and were used by the corporation in its farming operation after the transfer, and therefore the requirement that the property be used "in the same trade or business" is not met.

For the reasons stated herein, we agree with petitioners, and find that the property transferred to the corporation on January 1, 1979, was retained in the same trade or business. As all the conditions set forth in section 1.47-3(f)(1)(ii), Income Tax Regs., are satisfied, petitioners are not subject to recapture of their investment tax credits as a result of this transfer.

The case law under this regulation, as well as the legislative history of the statute, sheds some light on the meaning of the phrase "same trade or business" as used in the regulation. In *Baker v. United States*, 398 F. Supp. 1143, 1150 (W.D. Tex. 1975), the court stated that what is required is a factual determination that the same essential economic enterprise is conducted by the transferee as was conducted by the transferor. And in *Ramm v. Commissioner, supra* at 675, we stated that—

the phrase "trade or business" as it is used in those paragraphs refers to the trade or business as it existed prior to the disposition but without regard to the form in which the business activity was carried on. In other words, not only the type but also the scope of the trade or business must continue substantially unchanged after the change in form in order for the exception to recapture under section 47(b) to be applicable. It is apparent from the legislative history of section 47(b) that Congress intended that the trade or business remain intact after the change in form.

The legislative history of section 47(b) indicates that the transferee of the property must continue to operate the same trade or business formerly conducted by the transferor. H. Rept. 1447, 87th Cong., 2d Sess. A16, example 1 (1962), 1962-3 C.B. 405, 514; S. Rept. 1881, 87th Cong., 2d Sess. 152-153, example 1 (1962), 1962-3 C.B. 707, 856-857.

There is no dispute as to the fact that the corporation

used the farm implements and machinery after January 1, 1979, in the business of farming. Whether these assets were used in the same trade or business as they had been used before that transfer thus turns on the determination of whether petitioners were in the farming business or the leasing business, as respondent contends. In this connection, respondent states that while petitioners operated the farm prior to the 1974 incorporation, those activities ceased once the corporation took over the farm operation. Subsequent to incorporation, until the January 1, 1979, transfer of the farm implements and machinery to the corporation, petitioners engaged in the leasing of such property, as well as land and buildings, and received substantial sums as rent under such leases. The leasing of real property and buildings continued in 1979 and petitioners continued to receive rental income from the corporation. Accordingly, respondent submits that we must find that petitioners were in the leasing business from November 15, 1974, until at least 1979, and used the section 38 property at issue here in that business.

Petitioners, on the other hand, argue that they have always been farmers, not lessors, and that the farm equipment and machinery which they leased to the corporation was always used for farming. According to their brief, petitioners "never * * * conducted business activities as lessors, never received any income tax advantage as such and never exercised. any right to claim or use the leased property for purposes separate from their farming activities." Petitioners insist that they were passive lessors, for tax purposes only, and were always farmers. Petitioners further point out that they had a valid business purpose for not transferring the section 38 property at incorporation; i.e., avoidance of the State tax. Therefore, they argue, their leasing activities should be overlooked and the January. 1, 1979, transfer should be deemed part of the original transfer upon incorporation.

The issue in this case is essentially one of fact. Based on the facts before us, we conclude that petitioners were farmers. Although they set up a corporation to carry on the business, they in fact continued to operate the farm as its

employees. In substance, then, petitioners remained farmers even though they operated in corporate form.

The farm implements and machinery were likewise always used in farming. No change in the use of this property took place as a result of the January 1, 1979, transfer. The only change effected by that transfer was one of legal ownership.

We recognize that, as respondent points out, petitioners indeed were lessors of this property, and received rental income and tax advantages as such.[6] However, we are reluctant to find that such activities rose to the level of a trade or business.[7] Petitioners' trade or business remained the business of farming.

We do not mean to ignore the fact that petitioners chose to operate their business in corporate form, thereby creating a separate legal entity which owned and operated the business. But at all times the property in question was provided to the corporation and continued to be used in the operation of the farm. Our finding in this regard is similar to the holding of this Court in *Loewen v. Commissioner*, 76 T.C. 90 (1981).

In *Loewen*, the Court was faced with the issue of whether "substantially all the assets" of a farming operation had been transferred to a newly formed corporation. The case arose under subdivision (c) of the same regulation at issue here. The taxpayers had transferred all grain inventories, cattle, movable machinery, and equipment to the corporation in exchange for stock and securities. Rather than transfer title to the land and buildings used in operating the farm, the taxpayers leased them to the corporation. We assumed this decision was based on a State law restricting corporate ownership of farmland. We held that because the taxpayers transferred title to the personal property, and transferred the use of the real property, they had transferred "substantially all the assets" of the business. We

---

[6]The record is silent as to whether petitioners claimed depreciation on the farm implements and machinery it leased to the corporation. We assume they did. In any event, it is clear that they claimed investment tax credits on the purchase of these assets, which provided substantial tax advantages. However, these benefits would have been available to petitioners as sole proprietors.

[7]We find that petitioners' activities in connection with leasing this property were merely passive, and would not constitute an "active trade or business" under secs. 346(b) (subsequently recodified as sec. 302(e)) and 355(b). See secs. 1.346-1(c) and 1.355-1(c), Income Tax Regs.

noted that the taxpayers would continue to provide the use of the land and buildings to the corporation for use in the business, as their income was dependent on the continued operation of the farm and the property was essential to that operation.

The instant case is similar to *Loewen* in several respects, although the issue is slightly different. Both cases involve farmers who incorporated their sole proprietorships. Because of State law, the taxpayers in both cases found it more advantageous to lease rather than transfer some of the property to the corporation. However, in both cases, that property continued to be used in operating the farm.

Our holding today is based on our finding of fact that the farm implements and machinery transferred by petitioners were always used in the farming business.[8] We do not adopt petitioners' argument that because they had a valid business purpose for leasing the property, rather than transferring it at the outset, we should ignore the lease. Petitioners' "valid business purpose" may be relevant to their intent and thus have some weight in determining that their business was always farming, not leasing. However, we do not believe that standing alone, a "valid business purpose" should be deemed to overcome mandatory statutory criteria which would otherwise remain unsatisfied. See *Carlson v. Commissioner*, 79 T.C. 215 (1982), affd. 712 F.2d 1314 (9th Cir. 1983).

Nor was our decision in *Loewen v. Commissioner, supra*, based to any substantial extent on the taxpayers' reasons for not transferring title to their real property. In this respect, it is relevant to note that the District Court for the Eastern District of Washington adopted the *Loewen* approach in two subsequent cases, neither one of which involved a taxpayer who offered any "valid business purpose" for leasing rather than transferring the property to the corporation.[9] And the Commissioner, in his acquiescence in *Loewen*, made no mention of the taxpayer's "valid business purpose" as having any bearing on the result in that case. Instead, he stated that although the corporation

---

[8] Compare *Hudspeth v. Commissioner*, T.C. Memo. 1985-628.

[9] *Ostheller v. United States*, an unreported case (E.D. Wash. 1981, 48 AFTR2d 81-5735, 81-2 USTC par. 9531); *Felgenhauer v. United States*, an unreported case (E.D. Wash. 1981, 48 AFTR2d 81-5733, 81-2 USTC par. 9532).

leased, rather than owned, certain property, the difference between the old and new businesses was one of form, not substance. The taxpayers owned the leased property and the corporation, and their incomes were dependent upon the corporation's access to and use of the leased property.[10]

Based on the concepts developed in *Loewen v. Commissioner, supra*, we are therefore inclined to look upon petitioners' leasing activity as one of form. In substance, they remained farmers, and provided the farm implements and machinery to the corporation for use in operating the farm, both before and after January 1, 1979. The property was always used in the farming business.

We also note that by so holding, we are not frustrating the objective of the recapture rules. Those rules were enacted to prevent the "quick turnover of assets" by taxpayers in an effort to obtain "multiple tax credits." H. Rept. 1447, 87th Cong., 2d Sess. 13 (1962), 1962-3 C.B. 405, 417; S. Rept. 1881, 87th Cong., 2d Sess. 18 (1962), 1962-3 C.B. 707. There is no threat of multiple tax credits here. The corporation cannot take investment credit on this property, as it has not purchased it within the meaning of the statute. See secs. 48(c) and 179(d). The abuses Congress intended to prevent are therefore not present in this case. But see *Bremer v. Commissioner*, 66 T.C. 360 (1976).

In conclusion, we find that petitioners' farm implements and machinery were retained in the same trade or business following their transfer to petitioner's corporation. Under section 47(b), therefore, no recapture of investment tax credit is required.

*Decision will be entered for the petitioners.*

---

[10]Rev. Rul. 83-65, 1983-1 C.B. 10.