Henry C. MUELLER, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 73-3156.

United States Court of Appeals, Fifth Circuit.

June 28, 1974.

Rehearing Denied Aug. 27, 1974.

Robert O. Rogers, David S. Miesel, Palm Beach, Fla., for petitioner-appellant.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Tax Div., Dept. of Justice, Washington, D. C., Lawrence B. Gibbs, Acting Chief Counsel, Michael B. Frosch, I. R. S., Charles E. Anderson, Karl Schmeidler, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before BROWN, C. J., and TUTTLE and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal by the taxpayer from a judgment by the tax court in which he attacks five adverse determinations by that court dealing with his alleged tax deficiencies for the years 1962, 1963, 1966 and 1967. We affirm the judgment of the tax court in all respects except as to that determination denying to the taxpayer the right to claim a deduction for ordinary and necessary business expenses under section 162 to the extent of payments actually made to his business creditors by the trustee in bankruptcy in a year subsequent to the adjudication.[1]

The question arises in this way: The taxpayer, engaged in growing tomatoes, had received taxable income of $60,000 between January 1 and September 27, 1966. On September 27 he filed a voluntary petition in bankruptcy and title to his assets was transferred to a trustee. At the time of bankruptcy petitioner had unpaid business expenses in excess of $100,000. The bankruptcy proceedings terminated in 1968, and at that time the trustee paid trade or business expenses which had been incurred by petitioner prior to bankruptcy in the amount of $43,702.31.

The taxpayer contends that the transfer of title to his assets to the trustee in bankruptcy constitutes either "payment" or "constructive payment" of his unpaid business expenses, and that he is therefore entitled to a deduction under section 162. The taxpayer was on a cash receipts and disbursements basis.

A statement of the problem makes an appealing case for the taxpayer. Here he had collected up $60,000 in assets during operations in the first eight months of 1966, but had failed to pay any debts which, if paid in regular course of business, would have been deducted dollar for dollar to reduce his tax liability for the tax year 1966. Instead, following bankruptcy he turned over approximately $75,000 in value to the trustee who subsequently, although not until a subsequent tax year, paid out some $43,000 to creditors whose claims would normally have constituted business liabilities for tax purposes.

---

1. The taxpayer alleged error by the tax court on two other issues: (1) disallowance of a bad debt deduction; and (2) recapture of an investment credit on section 38 property.

In its opinion, the tax court, with three judges concurring in a brief opinion which stated "the results in connection with [this issue] are unfortunate; however, the court was required to reach the conclusions adopted by the majority, and it will require the creative hand of the legislature to enact new laws that will bring about reasonable results in this situation," and with five judges dissenting on this issue, based its decision solely upon the authority of B & L Farms Co. v. United States, 368 F.2d 571 (5th Cir. 1967), cert. denied, 389 U. S. 835, 88 S.Ct. 45, 19 L.Ed.2d 96 (1967). In its majority opinon the court made it plain that it was forced to this decision solely because:

"We are therefore required by Jack E. Golsen, 54 T.C. 742 (1970), aff'd. 445 F.2d 985 (C.A. 10, 1971), cert. denied, 404 U.S. 940, 92 S.Ct. 284, 30 L. Ed.2d 254 (1971), to follow the Fifth Circuit's decision. We therefore look to *B & L Farms* to determine whether the decision in that case is in fact controlling here."

■ Of course a panel of this Court does not have the authority nor would we consider, circumventing a decision of the Court in a prior case because of some insignificant difference in the state of facts. However, a careful reading of B & L Farms Co. v. United States, D.C., 238 F.Supp. 407, which was affirmed per curiam by this Court, Chief Judge Brown dissenting, reveals that there is an issue before us in this case which was not decided adversely to the taxpayer in *B & L Farms*.

In the earlier case, a corporation, on a fiscal year basis and using the cash receipts and disbursements method of accounting, had substantial income in excess of allowable deductions for business expenses prior to an adjudication in bankruptcy some five weeks before the end of the fiscal year, ending July 31, 1959. During that time the trustee apparently actually paid out of the assets which the corporation had at the time of adjudication some of these business debts. However, a major part of the corporation's assets which were now administered by the trustee in bankruptcy were not utilized for the payment of debts until after August 1, 1959, and thus payments were not actually made to the business creditors of the bankrupt corporation during the fiscal year of bankruptcy ending July 31, 1959. The taxpayer, acting through the trustee in bankruptcy, sought to reduce the corporation's income for the year of bankruptcy on the theory that the trustee took title to all the corporation's assets during the year 1959 and that this amounted to an actual or constructive payment by the bankrupt to its trade creditors as of the time that the trustee took possession. This Court held, by affirming the trial court's judgment per curiam, that since at the time of the takeover by the trustees of B & L Farms Co.'s assets neither the amount nor the fact of liability as to a large mass of creditors could then be ascertained, there was no actual or constructive payment to those persons who were ultimately paid. What and all the court decided was that no deduction could be taken in fiscal 1959 for payments unascertained in amount and not actually made to creditors until a later fiscal year. What was actually in issue in *B & L Farms* was a claim for a carryback refund under section 172 for taxes for the fiscal year ending July 31, 1956, to which the corporation would be entitled if it could establish that the turnover of assets to the trustees in June of 1959 amounted to payment to the creditors during that fiscal year.

What B & L Farms did not decide is that when the taxpayer's assets were actually paid out by the trustee to those creditors, whose claims would properly come within the definition of business expenses, this would not then be a deductible item for the year in which the amounts were actually paid to creditors. In point of fact, running through the *B & L Farms Co.* case the implication is clear that B & L Farms Co. would have been entitled to take the deduction in

the later fiscal year of payment, but that this would be of no benefit because the year 1956, whose income was sought to be balanced off by the carryback was too far removed from the year of payment, and thus was beyond the permissible statutory three year carryback period. The district court there said:

"Both parties hereto have conceded that there was a net operating loss, under Section 172, for the fiscal year ending July 31, 1959. This net operating loss for 1959 could be, and was, carried back to reduce the tax which was paid for the fiscal year ending July 31, 1956. It is important to note that we have already decided that trade expenses which were not 'paid' in the 1959 fiscal year cannot serve as deductions for purposes of computing the net operating loss for that year."

It is pointed out by Chief Judge Brown in his dissenting opinion to the affirmance by this Court that: "The Trustees in bankruptcy have applied for recovery of $162,538.73 in income taxes paid for the year ending July 31, 1956, under an asserted carry-back under Section 172 of the Internal Revenue Code of 1954. *This the Government opposes because, though the property of the Bankrupt did pass to the Trustees within the fiscal year 1959, the Trustees did not actually pay dividends to the creditors until a later year beyond the permissible carry-back three-year period.*" (Emphasis added).

The dissenting judge would have decided the basic question differently, that is to say, that the turnover of assets to the trustee would, in and of itself, amount to ordinary necessary business expenses. It is clear, however, that the dissenting and district court opinions contemplated a deduction, even though no benefit as a carryback to 1956 because outside the statutory period, to be recognized in the later year of payment, if it had any impact on taxes for that year.

In the Commissioner's brief, the Commissioner was seeking to point out that there was no distinction between the taxpayers in *B & L Farms Co.* and in the case before us merely because the taxpayer here is an individual whereas in the earlier case it was a corporate taxpayer. In support of this proposition the brief stated:

"Because the individual taxpayer may not be able to benefit from the business expenses disallowed in 1966 does not mean that these deductions are necessarily lost. They are merely transferred to the trustee who may use them to offset his own income or gain *or any of taxpayer's income or gain that is realized during the administration of the bankrupt estate.* In practical terms this differs little from the corporate situation. In any event, this is a rather minor discrepancy that does not justify different tax treatment for cash basis individual taxpayers." (Emphasis added).

This Court questioned counsel whether this language was intended to say that the business expenses disallowed in 1966 could be used to offset "any of taxpayer's income or gain that is realized during the administration of the bankrupt estate." The Commissioner's response denied any concession to that effect, saying in effect that it could be utilized only by the trustee to offset income the trustee might have obtained as interest on bank deposits or the like during the period of administration.

We conclude, as did the dissenting judge in the *B & L Farms Co.* case and as did nine judges of the tax court, and which view seems equally to have been shared by the majority who felt bound by our *B & L Farms Co.* decision, that the result reached in such a situation as this is to be avoided unless clearly required by a binding precedent. The case presents a totally distorted picture of the taxpayer's income when he's required to pay a tax on the total amount of receipts from a business but is not entitled to claim a deduction for the expenses incurred in creating that income, either when his assets are turned over

to the bankruptcy trustee (a matter that has been laid to rest now in this Circuit by *B & L Farms Co.*) or in a subsequent year when the trustee actually *pays* these business creditors. Recognizing ful well that we are enjoined not to consider the "equity" in tax interpretations, we find the issue with which we are here dealing to be one which has not been expressly determined heretofore.

■ We therefore conclude that the tax court erred in not allowing a deduction for business expenses carried back to 1966 by the taxpayer in an amount equal to that actually paid out as dividends by the trustees in bankruptcy to those persons whose claims would have been allowed as business expenses if paid during 1966.

■ We do not deal here with a claim of a bankrupt taxpayer for a refund of taxes overpaid before bankruptcy. Such a claim, existing at the time of bankruptcy, would, under the teaching of Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1965) pass to the bankrupt's estate for the benefit of creditors. We perceive no way in which the creditors of this taxpayer are deprived of any asset or benefit by reason of a disposition of this case in a manner that only reduces the taxpayer's prebankruptcy income tax liability, not dischargeable in bankruptcy.

The decision of the tax court is affirmed in part and reversed in part and the case is remanded to that court for further proceedings not inconsistent with this opinion.

SIMPSON, Circuit Judge (dissenting):

I view as controlling here our decision in B & L Farms Co. v. United States, 5 Cir. 1967, 368 F.2d 571, cert. denied 1967, 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed. 2d 96, affirming per curiam (Judge, now B & L Farms Co. v. United States, S.D. Chief Judge, Brown dissenting in part) Fla.1964, 238 F.Supp. 407.

The majority opinion seeks to distinguish *B & L Farms* because that case merely holds that turning over assets does not constitute payment during the taxable year in question, whereas the majority decision here is to allow credit for amounts *actually* expended by the trustee in later years.

Our opinion in *B & L Farms* adopted the district court opinion and its reasoning: "The conclusions reached by the district court are correct and its judgment is free from error. That judgment is affirmed." When we go back to the district court opinion in *B & L Farms* we find that that court did not limit itself to the fact of wholesale deduction. Instead it expressly held that payments by a trustee in later years cannot be deducted as "paid" in the taxable year under Section 162 of the Internal Revenue Code, *regardless* of whether the amounts are ascertainable then, later, or anytime. 238 F.Supp. at pp. 409–410. The majority's attempt to distinguish the two cases will not withstand critical analysis. The carry-over aspect of *B & L Farms* absent in the instant case, relied on as a distinguishing factor by the majority opinion is quite simply irrelevant. It came into play only after decision of the issue identical to the two cases, the disallowance of a deduction for expenses paid by the trustee after the year of adjudication of bankruptcy.

Agreed that *B & L Farms* produces a harsh result, it governs our decision of this case in my view. I would affirm the tax court *per curiam* on the authority of *B & L Farms*.

I respectfully dissent.