ESTATE OF F. RICHARD McCRACKEN, JR., DECEASED, STEPHEN L. FERGUSON, EXECUTOR, and HONORA R. McCRACKEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of McCracken v. Commissioner
Docket No. 7033-72.
United States Tax Court
T.C. Memo 1975-90; 1975 Tax Ct. Memo LEXIS 281; 34 T.C.M. (CCH) 460; T.C.M. (RIA) 750090; April 2, 1975, Filed Joseph D. Geeslin, Jr., for the petitioners. Thomas J. Meyer, for the respondent. TIETJENS
MEMORANDUM FINDINGS OF FACT AND OPINION TIETJENS, Judge: The Commissioner determined deficiencies in the Federal income taxes of F. Richard McCracken, Jr. (hereafter decedent) and Honora R. McCracken (hereafter Honora) as follows: Year Deficiency 1965 $ 22,165.19
1966 3,877.82
1967 134.51
1968 4,759.29
The sole issue for our decision is whether petitioners may deduct as worthless business debts under section 166(a), I.R.C. 1954, [1] loans made by decedent to Cochran Chair Company, Inc. (hereafter Cochran). *282 FINDINGS OF FACT Decedent resided in Hinsdale, Illinois at the dates of the filing of the petition and amended petition in this case. Decedent died on June 15, 1973, and Stephen L. Ferguson is the duly appointed executor of his estate. Honora resided in Paoli, Indiana, at the dates of the filing of the petition and amended petition herein. Decedent and Honora filed joint Federal income tax returns for the taxable years 1965, 1966, 1967, and 1968 with the district director of internal revenue, Indianapolis, Indiana. Decedent first purchased stock in Cochran in 1963. By November 1965 decedent was sole shareholder of Cochran. He did not become an employee of Cochran until late 1965. Decedent received no compensation from Cochran prior to 1966. He received $ 11,513.66, $ 14,186.95, and $ 21,504.20 in salaries and commissions from Cochran in 1966, 1967, and 1968, respectively. The following appears in the minutes of the Board of Directors of Cochran for August 1, 1968: As the first order of business the President stated that the SBA loan had been approved in the amount of $ 115,000.00 and that the SBA loan required the cancellation of the leases dated November 1, 1965, September 1, 1965, and *283 April 1, 1966 by and between Frank Richard McCracken, Jr., and Cochran Chair Company, Inc. and upon said cancellation he would transfer the machinery listed in said leases to the company. * * * * * The President, Frank R. McCracken, Jr. further stated that the SBA further required the transfer of certain notes signed by the Corporation and given to Frank Richard McCracken, Jr. for loans by Mr. McCracken to the Corporation at various dates and in various amounts totaling $ 71,000.00, to the corporation. He said that the Corporation was in such a financial condition that the notes were uncollectable and worthless. The members of the Board then upon motion duly made, seconded and unanimously carried, adopted the following resolution: BE IT RESOLVED, that various notes which have been given to Frank Richard McCracken, Jr. upon various loans made at various times and approved in the minutes of the Corporation on the following dates, and at other times in the amount of $ 71,000.00 are hereby transferred to the company by Mr. McCracken with a novation of said notes. On September 11, 1968, decedent entered into an Agreement for the Purchase and Sale of Stock of Cochran Chair Company, *284 Inc. with Rochester Capital Leasing Corporation. Under that agreement, decedent agreed to "convert" all loans to common stock of Cochran. On their 1968 Federal income tax return, decedent and Honora reported a gross sales price of $ 78,750 on the sale of the 480 shares of Cochran, which represented the entire outstanding common stock of Cochran. Decedent and Honora claimed a business bad debt deduction of $ 91,648.23 attributable to the notes receivable from Cochran. The Commissioner determined that a deduction was not authorized in 1968 and that decedent's basis in the notes was $ 62,902.91 rather than $ 91,648.23. OPINION Petitioners argue that, when, on August 1, 1968, the board of Cochran resolved that decedent's notes were to be transferred to Cochran, the notes became worthless. Those worthless debts, petitioners argue, were deductible as business debts under section 166(a)(1). We do not believe that petitioners have proven, as they must, that the notes became wholly worthless in 1968. See Henry C. Mueller,60 T.C. 36, 41 (1973), reversed on another issue 496 F.2d 899 (C.A. 5, 1974). The heart of petitioners' argument lies in the cancellation *285 of the debts in order to obtain a loan from the Small Business Administration. Petitioners argue that, when the debts were cancelled, they were made worthless and deductible. However, it is well established that the voluntary cancellation of a debt does not establish its worthlessness. Cimarron Trust Estate,59 T.C. 195, 199 (1972). See also Liggett's Estate v. Commissioner,216 F.2d 548 (C.A. 10, 1954), affirming a Memorandum Opinion of this Court, which involved a debt forgiven as part of a refinancing plan. Petitioners also rely on the self-serving testimony of Honora, the only witness at the trial, and on statements made by decedent at meetings of Cochran's board of directors. That testimony and those statements are not sufficient to prove worthlessness. In regard to the financial condition of Cochran, we note that on September 11, 1968, decedent entered an agreement to sell his stock for a gross sales price which he reported as $ 78,750 on his Federal income tax return. Apparently, the business remained a going concern. See Richard R. Riss, Sr.,56 T.C. 388, 408 (1971), remanded on another issue 478 F.2d 1160 *286 (C.A. 8, 1973), affirmed sub nom. Commissioner v. Transport Mfg. & Equip.Co.,478 F.2d 731 (C.A. 8, 1973). We conclude that section 166 does not authorize the deduction of the notes in 1968. [2]
Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
2. The Commissioner determined that decedent's basis in the notes was $ 62,902.91 rather than the $ 91,648.23 claimed on the return. The amount of loans outstanding and "transferred" was raised in the petition and covered by both parties in their briefs, but the Commissioner says that we need not decide that amount if we hold that the notes are not deductible as worthless business debts. Nevertheless, in the light of the fact that, in his briefs, the Commissioner suggests that, in a computation under Rule 155, the basis of the notes transferred will be included in petitioners' basis in the stock sold, we have carefully considered the evidence submitted by petitioners on the value of the notes. We hold that petitioners have not carried their burden of proving that the notes had a basis of more than $ 62,902.91, the amount determined by the Commissioner.↩