RALPH ROGER BERGMAN AND INGEBORG BERGMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bergman v. Commissioner
Docket No. 22593-81.
United States Tax Court
T.C. Memo 1985-256; 1985 Tax Ct. Memo LEXIS 375; 49 T.C.M. (CCH) 1578; T.C.M. (RIA) 85256; May 29, 1985. The court entered its order in favor of the commissioner. Ralph Roger Bergman, pro se. Mark H. Howard, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency of $3,013 in petitioners' Federal income tax for the taxable year 1976. After concessions, the issue remaining for decision is whether petitioners are entitled to deduct certain real property taxes, interest payments, and legal fees. These expenses were paid out of the proceeds of the sale of petitioners' residence. The question is whether that residence was part of the bankruptcy estate of petitioner ralph *378 Roger Bergman so that the payments were made by the bankruptcy estate rather than by petitioners individually. FINDINGS OF FACT Petitiones Ralph Roger Bergman (Mr. Bergman) and Ingeborg Bergman (Mrs. Bergman), husband and wife, resided in Boulder, Colorado at the time they filed their petition in this case. They filed a joint Federal income tax return (Form 1040) for their 1976 taxable year, reporting their income under the cash receipts and disbursements method of accounting. On July 1, 1975, Mr. Bergman filed a voluntary bankruptcy petition under Chapters I-VII of the Bankruptcy Act [1] with the United States District Court for the District of Colorado. Mrs. Bergman did not join in the bankruptcy petition. The bankruptcy petition listed Mr. Bergman's residence as 616 Peakview Circle, Boulder, Colorado (the Peakview property). [2] At the time the bankruptcy petition was filed, title to the Peakview property was held by Mrs. Bergman, such title having been transferred to her from Mr. Bergman and his mother, Margaret Bergman Long (Mrs. Long) by warranty deed dated August 1973, [3] and recorded on August 3, 1973. The deed stated that the transfer was made ". . . in consideration *379 of the sum of one dollar and other good and valuable consideration." Attached to the bankruptcy petition was a separate schedule upon which Mr. Bergman listed his debts. He listed as a secured creditor the NBS Credit Union (Boulder Standards Federal Credit Union), having a claim in the amount of $20,000 against the Peakview property. A notation on the schedule indicated that Mr. Bergman did not hold title to the Peakview property. On another separate schedule attached to the bankruptcy petition, Mr. Bergman *380 listed the law firm of Dupler and Koeberle as an unsecured creditor with a claim in the amount of $5,000. The same schedule also listed an attorney named Marvin Woolf as an unsecured creditor with a claim in the amount of $2,800. The claims of Dupler and Koeberle as well as Mr. Woolf represented legal expenses incurred by Mr. Bergman in litigating a back pay claim against his previous employer, the United States Department of Commerce. At the first meeting of creditors on July 22, 1975, Evelyn Salazar was elected trustee of this bankruptcy estate and she continued to serve as trustee until at least January 3, 1977. Pursuant to leave of the Bankruptcy Court, on September 30, 1975, the trustee in bankruptcy (hereinafter the trustee) filed a complaint against Mr. Bergman, Mrs. Bergman, and Mrs. Long in a state court, the District Court for the County of Boulder, State of Colorado, seeking to set aside certain conveyances of real and personal property as fraudulent, among them the transfer of the Peakview property to Mrs. Bergman by Mr. Bergman and Mrs. Long in August of 1973. [4] An answer was timely filed by Mr. Bergman, Mrs. Bergman, and Mrs. Long, denying that such transfers were *381 fraudulent and asserting that all such transfers were supported by a valuable consideration and further alleging that the trustee's claims were barred by the statute of limitations. There is no evidence in the record of this case that the transfer of the Peakview property was for a valuable consideration. Mr. Bergman subsequently attempted to settle the state court action. When this proved unsuccessful, Mr. Bergman decided to try to convert his bankruptcy proceeding into a proceeding for a Plan of Arrangement under Chapter XI of the Bankruptcy Act, secs. 306-399, 11 U.S.C. secs. 706-799 (1976). [5] On august 11, 1976, and while the state court action was still pending, Mrs. Bergman reconveyed the Peakview property to Mr. Bergman by quitclaim deed, expressly reserving, however, any statutory homestead rights she might have in the property. The consideration for the quitclaim deed was again stated to be ". . . *382 one dollar and other good and valuable considertions [sic] . . ." The primary purpose underlying this transfer was to attempt to perfect a Plan of Attangement under Chapter XI of the Bankruptcy Act. Subsequent to such transfer, Mrs. Long filed a proof of claim in the amount of $16,000 that was in some way related to the Peakview property. On or about August 12, 1976, Mr. Bergman filed a petition in the Bankruptcy Court seeking t convert his voluntary bankruptcy petition under Chapter I-VII of the Bankruptcy Act into a Proceeding for Arrangement of his debts under Chapter XI of the Bankruptcy Act.The petition was granted by the Bankruptcy Court to the extent that Mr. Bergman was appointed the debtor-in-possession for Chapter XI purposes and authorized to retain possession of the Peakview property until further order of the Bankruptcy Court. The record does not establish that Mr. Bergman as debtor-in-possession succeeded to all the rights, titles, interests, and powers of the trustee in *383 bankruptcy in the administration of the bankrupt estate. In view of the continuing active participation of the trustee, as recited below, Mr. Bergman's role as debtor-in-possession was limited and closely supervised by the Bankruptcy Judge and the trustee in bankruptcy. His appointment as debtor-in-possession was designed to facilitate sale of the Peakview property, a sale Mr. Bergman had already negotiated but could not carry out because of the pending state court action and the lis pendens placed upon the property by the trustee. On August 12, 1976, Mr. Bergman also applied to the Bankruptcy Court for permission to sell the Peakview property pursuant to the previously negotiated agreement. The contract for sale provided for a gross sale price of $55,000, the net proceeds of which after deduction of all ordinary closing costs, plus encumbrances and liens, were to be deposited in the Bankruptcy Judge's official account and used to pay creditors. By order issued the same day, Mr. Bergman was authorized to ratify the contract for sale as the debtor-in-possession, but the proceeds of the sale were to be distributed only upon further order of the Bankruptcy Court. By order dated *384 August 23, 1976, the Bankruptcy Court ordered that the real estate be sold free and clear of all liens and encumbrances thereon, but than such liens and encumbrances were to be preserved in the proceeds of sale. One of the liens and encumbrances specifically preserved in the proceeds of the sale was that of the trustee in bankruptcy in her state court action against Mr. Bergman, Mrs. Gergman, and Mrs. Long. The trustee in bankruptcy was then directed to take the necessary action to effect a release of the lis pendens recorded against the Peakview property in connection with that state court case. As a part of this latter order of August 23, 1976, the Bankruptcy Court specifically found that the Peakview property had been transferred to Mr. Bergman prior to his filing of the petition under Chapter XI, that he was the fee owner thereof, and that such property was subject to the jurisdiction of the Bankruptcy Court. The order of August 23, 1976 further provided that the net proceeds of the sale, after payment of certain amounts, were to be transferred to the Bankruptcy Judge's official account. The contract of sale was subsequently executed and a warranty deed transferring the Peakview *385 property to the purchasers thereof was executed on September 1, 1976. The Bodin Realty Company of Boulder, Colorado (Bodin) acted as the realtor and escrow agent for the sale. The purchase price of $55,000 was first used to pay the following: Payoff Loan with Boulder Standards
Credit Union
$25,080.88 Title Insurance Premium (Owner's)
229.00 Recording Court Order and Deed
8.00 Recording Release of Deed of Trust
10.00 1975 Taxes Plus Interest
861.08 1976 Tax Proration 1-1-76 to 9-1-76
244 days at $2.4915 per diem
607.93 Septic Inspection & Well Test
125.00 Pumping of Septic Tank
75.00 Real Estate Commission
3,850.00 ($30,846.89)
Of the total amount of $25,080,88 paid to the Boulder Standards Federal Credit Union, $5,127.87 thereof represented interest on such loan. The net proceeds from the sale, $24,153.11, were then transferred by Bodin as escrow agent and deposited in the Bankruptcy Judge's official account pursuant to the order of August 23, 1976. On August 12, 1976, Mr. Bergman, as debtor-in-possession, had also filed a petition with the Bankruptcy Court seeking to substitute himself as the party plaintiff in the state *386 court action brought by the trustee in bankruptcy and also for an order requiring the dismissal of that action. As part of this petition, Mr. Bergman stated that the Bankruptcy Court then had jurisdiction over the Peakview property and any issues raised in the state court action concerning such property were now moot. The trustee in bankruptcy had initially opposed Mr. Bergman's petition requesting that he be substituted as party plaintiff (in a law suit brought against himself, among others, as defendant) and for an order requiring dismissal of the state court action. However, after negotiations with the defendants (Mr. Bergman, Mrs. Bergman, and Mrs. Long) in the state court action, the trustee joined with Mr. Bergman in seeking compromise of the state court action, filing with the Bankruptcy Court an Application for Authority to Compromise Controversy on September 22, 1976. As part of such compromise, Mrs. Long agreed to withdraw her previously filed Proof of Claim in the amount of $16,000, and Mr. and Mrs. Bergman agreed to waive any claim to a homestead exemption they might otherwise have concerning the Peakview property. On December 1, 1976, the Bankruptcy Court approved *387 the proposed settlement and issued its Order Authorizing Compromise of Controversy providing, inter alia: 1. That said action [against Mr. & Mrs. Bergman and Mrs. Long for fraudulent conveyances] shall be dismissed with prejudice. 2. That the Trustee shall receive for purposes of distribution the sum of $24,153.11 which sum is presently deposited in the Bankruptcy Judge's official account and represents the proceeds from the sale of [the Peakview Property]. * * * 4. That MARGARET BERGMAN LONG shall withdraw her Proof of Claim previously filed with this Court in the sum of $16,000.00. 5. That the Bankrupt, RALPH ROGER BERGMAN and his wife, INGEBORG BERGMAN, shall withdraw any claim they may have for of the property previously described above. The Order further provided that this arrangement constituted full settlement of the trustee's claim in the state court action. Pursuant to the Bankruptcy Court's order, Mrs. Long subsequently filed her withdrawal of Proof of Claim, and Mr. and Mrs. Bergman filed their waiver of homestead exemption in the Peakview property, and the state court action was dismissed with prejudice on December 13, 1976. Utilizing the net proceeds *388 from the sale of the Peakview property, the trustee in bankruptcy subsequently paid Dupler and Koeberle and Marvin Woolf the amounts of $4,000 and $1,600, respectively, in satisfaction of their claims for legal expenses incurred in litigating Mr. Bergman's back pay claim against the United States Department of Commerce. Such claims were paid entirely out of the net proceeds from sale of the Peakview property. No personal funds of Mr. or Mrs. Bergman were utilized to pay such claims. The record does not indicate when the bankruptcy proceeding was finally concluded or when Mr. Bergman was discharged in bankruptcy. No plan of arrangement was ever confirmed under the Chapter XI proceeding and at some point the proceeding reverted back to a liquidating bankruptcy proceeding. At some point there was a final meeting of creditors and on January 3, 1977 the Bankruptcy Judge filed his Findings, Conclusions and Orders on Applications for Allowances and other Expenses of Administration. On their joint tax return for 1976 (Form 1040), petitioners claimed itemized deductions of $1,310 for real estate taxes attributable to the Peakview property, and also the amount of $8,615 as interest expense. *389 [6] Petitioners also claimed the amount of $5,600 as miscellaneous itemized deductions, such amount representing the legal fees paid to Dupler and Koeberle and Marvin Woolf out of the sales proceeds from the Peakview property. In his statutory notice of deficiency, respondent disallowed in toto the above amounts claimed by petitioners for real estate taxes, interest expense, and legal fees. *390 OPINION At issue in this case is petitioners' entitlement to claimed deductions for real estate taxes, mortgage interest, and legal expenses. This dispute does not involve whether such amounts are proper deductions, but rather who is entitled to such deductions: petitioners individually or the bankruptcy estate of Mr. Bergman. Petitioners' entitlement to the deductions depends mainly [7] upon whether or not the family residence, the Peakview property, became part of the bankruptcy estate created by the filing of Mr. Bergman's voluntary bankruptcy petition. If it did, it is clear that petitioners in their individual capacity would not be entitled to any of the deductions at issue in this case. For the reasons stated hereinafter, we think the Peakview property did become part of the bankruptcy estate, precluding petitioners' entitlement to the deductions. *391 The filing of a petition in bankruptcy under Chapters I-VII of the Bankruptcy Act creates an estate which, in general, consists of all the nonexempt property and interests therein owned by the bankrupt when the petition is filed, title to which vests by operation of law in the trustee upon his or her appointment and qualification. Bankruptcy Act, sec. 70(a); 11 U.S.C. sec. 110(a) (1976). See also Cowans, Bankruptcy Law and Practice, sec. 342 (2d ed. 1978). In addition to property owned by the bankrupt at the time the petition is filed, certain property or interests therein disposed of prior to filing the bankruptcy petition may also be recovered by the trustee. In particular, property which has been transferred in such a manner as to constitute a "fraudulent conveyance" under either Federal or state law may be recovered by the trustee. See Bankruptcy Act, secs. 67(a), (d)(2) and (3), 110(a)(4), (c), and (e) (1976). See also Cowans, Bankruptcy Practice and Procedure, secs. 479-489 (2d ed. 1978). In the instant case, since Mrs. Bergman, by reason of the prior *392 conveyance to her, held legal title to the Peakview property at the time Mr. Bergman filed his bankruptcy petition, the Peakview property did not automatically become part of the bankruptcy estate. However, the trustee in bankruptcy obtained permission from the Bankruptcy Court to institute and instituted an action in the state court to set aside the conveyance of the Peakview property and conveyances of other real and personal properties as fraudulent. Resolution of the state court action in the trustee's favor would have brought the Peakview property into the bankruptcy estate. [8] Bankruptcy Act, sec. 70(a)(4); 11 U.S.C. sec. 110(a)(4) (1976). However, prior to any decision in the state court action, Mrs. Bergman transferred the property back to Mr. Bergman, and the Bankruptcy Court allowed him to retain the property as debtor-in-possession [9] until further order of the Bankruptcy Court. We think that the purpose of this transfer was twofold: to provide the bankruptcy estate with assets that could be liquidated and used to pay creditors pursuant Mr. Bergman's proposed arrangement under Chapter XI [10] if such arrangement was confirmed, and also to act as an *393 incentive for settlement of, or to render moot, the state court action. Regardless of whether the transfer by Mr. Bergman to his wife was or was not a fraudulent conveyance that could have been avoided by the trustee, we think the Peakview property became part of the bankruptcy estate upon the transfer of such property to Mr. Bergman under the facts of this case. *394 Furthermore, the Bankruptcy Court made a specific finding that the Peakview property was subject to its jurisdiction, and we will not question that determination in this proceeding. We note also that subsequent to such transfer petitioners, who were represented by an attorney in the bankruptcy proceeding, acted in a manner consistent with a belief on their part that the Peakview property was part of the bankruptcy estate and subject to the Bankruptcy Court's jurisdiction. For example, in his petition to substitute himself as the party plaintiff in the state court action, Mr. Bergman represented to the Bankruptcy Court that "since the filing of The Chapter XI Petition for arrangement, the [Peakview] property has been transferred by Ingeborg Bergman to Ralph Roger Bergman, debtor-in-possession, and the [Bankruptcy] Court now has jurisdiction over said property." The Peakview property was subsequently sold under the auspices of the Bankruptcy Court. The state court action was then dismissed with prejudice by agreement of the trustee in bankruptcy, the bankrupt, and the Bankruptcy Court. The sale proceeds, which also constituted property of the bankruptcy estate, were then *395 utilized to pay the real estate taxes, mortgage interest, [11] and legal fees at issue herein. It is well settled in this Court that an individual bankrupt and the bankruptcy estate as represented by the trustee are separate taxable entities, and each is required to file separate tax returns. Bloomfield v. Commissioner,52 T.C. 745, 750 (1969) and cases cited therein. [12] Petitioners, as individual cash basis *396 taxpayers, may claim deductions only for otherwise deductible real estate taxes, mortgage interest, and legal expenses actually paid by them, not those paid by a separate taxable entity such as the bankruptcy estate herein. Since the full amount of such taxes, interest, and legal expenses were actually paid by the bankruptcy estate utilizing proceeds from the sale of property belonging to the bankruptcy estate, petitioners are not entitled to deduct any portion of such payments. Any deductions arising therefrom belong exclusively to the bankruptcy estate. *397 In our search for case law addressing this issue, we found only one case which allowed an individual bankrupt-taxpayer to deduct amounts paid by the trustee out of property belonging to the bankruptcy estate. See Mueller v. Commissioner,496 F. 2d 899 (5th Cir. 1974), affg. in part, revg. and remanding in part 60 T.C. 36 (1973) (Court Reviewed). The facts of that case are distinguishable. In Mueller, the taxpayer-bankrupt was the sole proprietor of an on-going business enterprise when he filed his bankruptcy petition. A failure to allow the bankrupt-taxpayer to claim the deductions in issue would have led to the result of requiring him to report most of the sole proprietorship's business income while giving the bankruptcy estate the benefit of most of the deductions arising from business expenses incurred by the sole proprietorship, which the Fifth Circuit deemed a result ". . . to be avoided unless clearly required by a binding precedent," which the Fifth Circuit found to be absent. Mueller v. Commissioner,supra,496 F. 2d at 902. However, in the present case there is no splitting of the income and deductions of a going *398 business, so we are not faced with the fact situation present in Muller, nor with the justification for the result reached therein. We note that in reaching our decision in Mueller,supra, 60 T.C. at 44, this Court concluded that the Fifth Circuit's earlier decision in B & L Farms Co. v. United States,368 F. 2d 571 (5th Cir. 1966), was dispositive under the Golsen rule, [13] on the matter of the requirement for "actual payment by a cash basis taxpayer" for a deduction under section 162, a requirement "applicable to both individual and corporate taxpayers." 60 T.C. at 44. In reversing our decision in Mueller,supra,496 F. 2d at 901-902, the Fifth Circuit concluded that its decision in B & L Farms Co.,supra, had only addressed the issue of whether the transfer of the bankrupt-taxpayer's assets to the trustee by operation of law could be considered as a "constructive payment" by the bankrupt-taxpayer to his creditors, entitling the bankrupt-taxpayer to claim any deductions arising therefrom. In the words of the Fifth Circuit: What B & L Farms did not decide is that when the taxpayer's assets were actually paid *399 out by the trustee to those creditors, whose claims would properly come within the definition of business expenses, this would not then be a deductible item for the year in which the amounts were actually paid to creditors. In point of fact, running through the B & L Farms Co. case the implication is clear that B & L Farms Co. would have been entitled to take the deduction in the later fiscal year of payment, * * *. Mueller v. Commissioner,496 F. 2d at 901-902. The Fifth Circuit addressed only the matter of timing. In holding that the individual bankrupt-taxpayer in Mueller could deduct expenses paid by his trustee in bankruptcy with funds belonging to the bankruptcy estate, the Fifth Circuit did not address the fact that Mueller was an individual taxpayer whereas B & L Farms Co. was a corporate taxpayer. In this regard the implication in B & L Farms Co. that the deduction could be taken later was predicated upon the fact that the bankrupt-raxpayer in B & L Farms Co. was a corporation. The estate in bankruptcy of a corporation does not constitute *400 a taxable entity separate from the bankrupt-corporation. Sec. 1.641(b)-2(b), Income Tax Regs. However, the estate in bankruptcy of an individual, such as Mr. Bergman, does constitute a separate taxable entity. Bloomfield v. Commissioner,supra.Thus, the Fifth Circuit's Mueller opinion did not consider the issue we are called upon to decide here. [14] We are not persuaded that petitioners herein are entitled to deduct amounts paid by the trustee out of funds belonging to the bankruptcy estate of Mr. Bergman. *401 Petitioners have not suggested that the temporary conversion of Mr. Bergman's liquidating bankruptcy proceeding into one for an arrangement under Chapter XI should lead to a different result in this case. Since such an argument may perhaps be implicit in petitioners' rather poorly-articulated position, we will consider the matter. We have previously held that the filing of a petition for arrangement under Chapter XI and the appointment of a debtor-in-possession does not give rise to the creation of a taxable entity separate and apart from the taxpayer-debtor. See Davis v. Commissioner,69 T.C. 832 (1978); CHM Co. v. Commissioner,68 T.C. 31, 34-36 (1977). However, in this case, a separate taxable entity had already been created by Mr. Bergman's earlier filing of a voluntary bankruptcy petition. Moreover, on the facts in this case, with the pending state court suit to set aside the alleged fraudulent conveyance of the Peakview property, we are not convinced that Mrs. Bergman's reconveyance of the property to her husband and his filing of a petition under *402 Chapter XI somehow gave him legal title to the property outside of the bankruptcy estate. Mr. Bergman had negotiated a sale of the property but could not sell it because of the lis pendens recorded against the property by the trustee in bankruptcy. The Bankruptcy Court permitted him to retain the property as debtor-in-possession solely to facilitate the sale already negotiated and only until further order by the Bankruptcy Court. The further order of the Bankruptcy Court permitted the sale but preserved all liens and encumbrances in the proceeds of the sale. One of the liens and encumbrances specifically reserved pertained to the suit instituted by the trustee in bankruptcy to set aside the fraudulent conveyance. Mr. Bergman's narrowly circumscribed and ephemeral role as debtor-in-possession of the Peakview property (at most from August 11, 1976 when Mrs. Bergman executed the quitclaim deed to September 1, 1976 when the property was sold under the auspices of the Bankruptcy Court) could hardly serve to keep this property outside the bankruptcy estate. If anything, Mr. Bergman was trying to get the property into the bankruptcy estate and thus to moot the state court proceeding for *403 fraudulent conveyance. In any event, we note that Mr. Bergman's plan for arrangement was never confirmed and the proceeding subsequently reverted to a liquidating bankruptcy proceeding. Section 378 of the Bankruptcy Act, 11 U.S.C., sec. 778 (1976) provides, in part, that: Upon the entry of an order directing that bankruptcy be proceeded with * * * in the case of a petition filed [where there is a pending bankruptcy proceeding], the bankruptcy proceeding shall be deemed reinstated and thereafter shall be conducted, so far as possible, as if such petition under [Chapter XI] has not been filed * * * Thus, we are satisfied that the putative but ephemeral conversion of Mr. Bergman's bankruptcy proceeding into one for an arrangement under Chapter XI has no effect on our decision herein. Based on the record as a whole, we hold that the Peakview property was part of the estate in bankruptcy of Mr. Bergman and that the payments of mortgage interest, real estate tax, and legal fees were made by the estate in bankruptcy, a taxable entity separate and apart from Mr. Bergman. *404 Petitioners' entire case herein appears to have rested upon their conclusion that a certain letter sent to them on January 15, 1981 by a Mr. Vern Classen, at that time an appeals officer in the southwest region of the Internal Revenue Service, in which he informed petitioners of his intention to recommend that respondent concede the deductibility of the mortgage interest, served to preclude respondent from now denying their entitlement to said deduction. Even if such document had been admissible in evidence and received by the Court, it would not be binding upon respondent. See, e.g., Botany Worsted Mills v. United States,278 U.S. 282 (1929); Sampson v. Commissioner,444 F. 2d 530, 531 (6th Cir. 1971), affg. a Memorandum Opinion of this Court; Cleveland Trust Co. v. United States,421 F. 2d 475 (6th Cir. 1970), affg. 266 F. Supp. 824 (N.D. Ohio 1966); Country Gas Service, Inc. v. United States,405 F. 2d 147 (1st Cir. 1969); Martin v. Commissioner,56 T.C. 1294, 1300 (1971); Parks v. Commissioner,33 T.C. 298, 302 (1959); Baker v. Commissioner,24 T.C. 1021, 1024 (1955). *405 Petitioners' reliance upon that document was misplaced. Assuming that Mr. Classen made such a recommendation, it is evident that he was overruled by his superiors. The trial in the Tax Court is a de novo proceeding, and neither respondent nor this Court is bound by Mr. Classen's conclusory statement that the mortgage interest was paid from proceeds which were not controlled by the trustee of the bankrupt estate. On the entire record before us, we have reached a different conclusion on the facts and the law. In their briefs petitioners asserted other errors that deserve but brief mention. Their assertion that the Court's failure to appoint counsel to represent them violated their constitutional rights under the Sixth Amendment is meritless. The Sixth Amendment is generally not applicable in civil tax proceedings. Riland v. Commissioner,79 T.C. 185, 207 (1982); Cupp v. Commissioner,65 T.C. 68, 85-86 (1975), affd. without published opinion 559 F. 2d 1207 (3d Cir. 1977). Petitioners were afforded full opportunity to be heard and to represent *406 themselves at trial, and their constitutional rights have not been infringed by the Court's refusal to appoint counsel to represent them. Furthermore, petitioner's constitutional rights have in no way been curtailed by this Court's refusal to order that they be provided with a free copy of the trial transcript. Even assuming that the legal principles established by Griffin v. Illinois,351 U.S. 12 (1956), and its progeny may be applicable to civil tax proceedings in the United States Tax Court, [15] Mr. Bergman's self-serving and uncorroborated statements on brief do not establish that they were in fact indigent and could not afford to purchase the transcript. Petitioners' reliance upon Mr. Bergman's previous bankruptcy proceedings, which transpired in 1975 and 1976, does not indicate that petitioners were indigent at the time of their trial herein, which occurred several years later. Further, we note that the bankruptcy proceedings related solely to Mr. Bergman, and could thus form no basis for any inference concerning Mrs. Bergman's ability to pay for the trial transcript. In addition, we note that the Form W-2 attached to petitioners' 1976 Federal income tax *407 return (Form 1040) reveals that Mr. Bergman was covered by a qualified retirement plan and the record does not reveal that he was not receiving payments from such plan at the time of the trial. Mr. Bergman retired in 1977 from his employment with the United States Department of Commerce. Petitioners' constitutional rights were in no way violated by the Court's refusal to order that they be provided a free copy of the trial transcript. Petitioners continue to protest the Court's refusal to grant their motion for continuance of the trial, which alleged that Mr. Bergman was taking prescribed medication for hypertension and that such medication "would make it unwise for him to appear in a litigation case." Other than Mr. Bergman's self-serving statement and an uninformative hearsay document (a doctor's statement) attached to the motion, there is no evidence in the record that he was in fact taking any prescribed medication at the time of trial, nor that any such medication would in any way hinder his mental capacities. Observation of Mr. Bergman at trial reveals that he was *408 very lucid and alert as to the trial proceedings. Indeed, the Court observed that he exhibited great stamina and vigor in pursuing his arguments at great length, raising his claims that his judgment was hampered by the medication usually when rulings adverse to his position were rendered. Finally, petitioners throughout the trial of this case have labored under the belief that respondent must prove petitioners are not entitled to the deductions in issue. They are sadly mistaken. It is well settled that a deficiency determination ordinarily carries with it a presumption of correctness. Welch v. Helvering,290 U.S. 111 (1933); Bernuth v. Commissioner,470 F. 2d 710, 714 (2d Cir. 1972), affg. 57 T.C. 225 (1971). It is also well settled that except where otherwise provided in the Internal Revenue Code or the Tax Court Rules of Practice and Procedure, the burden of proof ordinarily rests with petitioners. Welch v. Helvering,supra;Rule 142(a), Tax Court Rules of Practice and Procedure. There is nothing present in the *409 instant case to serve to place that burden on respondent. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All references to the Bankruptcy Act herein are to the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544, as amended and in effect during petitioners' 1976 taxable year. The Bankruptcy Act of 1898 has since been repealed and replaced by the Bankruptcy Code of 1978. Pub. L. 95-598, 92 Stat. 2549 et seq., 11 U.S.C. sec. 101 et seq.↩ (effective generally as of October 1, 1979). 2. The legal description of this property was Tract 16, Sixth Addition, Boulder Heights, County of Boulder, State of Colorado. ↩
3. The deed did not specify the exact date of execution, but it certainly must have occurred prior to August 3, 1973, the date such deed was recorded.↩
4. In addition, the trustee sought to set aside the conveyance of an additional parcel of real estate by Mr. Bergman to Mrs. Bergman, as well as the transfer of a separate parcel of real estate and two automobiles from Mr. Bergman to Mrs. Long.↩
5. The provisions pertaining to Arrangements under Chapter XI are now found in sections 1101-1174 of the Bankruptcy Code of 1978, 11 U.S.C. secs. 1101-1174 (1982)↩.
6. Of the total amount of $8,615 claimed as interest expense on petitioners' return (Form 1040), only $5,127.87 thereof was paid from the sales proceeds of the Peakview property. The record is not clear whether the remaining amount of $3,487.13 claimed as interest expense by petitioners related to the Peakview property. In his statutory notice of deficiency, however, respondent disallowed the entire $8,615 claimed as interest expense. Petitioners having failed to introduce any evidence concerning their entitlement to the $3,487.13 claimed as interest expense and in excess of the amount of interest paid out of the sales proceeds, they must be deemed to have conceded this item or they have failed to carry their burden of proof with respect to this excess amount. Respondent's determination that such amount is not deductible is sustained. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.↩
7. Petitioners have advanced no argument concerning whether they might be entitled to deduct any amount of the real property taxes and mortgage interest which might have accrued prior to the filing of Mr. Bergman's bankruptcy petition, during which time title to the Peakview property stood in Mrs. Bergman's name. However, since it is undisputed that the real estate taxes and mortgage interest were paid out of the proceeds of the sale of the Peakview property, if such property or the proceeds of the sale thereof are found to be property of the bankruptcy estate, petitioners will have lost any possible entitlement to deduct the real estate taxes and mortgage interest. That is because petitioners did not pay such amounts, payment thereof instead being made by the bankruptcy estate, a taxable entity separate and apart from petitioners.↩
8. There is no evidence in the present case to establish that these conveyances were for valuable consideration. Petitioners' claim that the trustee's action was barred by the statute of limitations is without merit. Under sections 11(e) and 70(e) of the Bankruptcy Act, 11 U.S.C. secs. 29(e) and 110(e) (1976), the trustee can bring an action to set aside a fraudulent conveyance within the period of limitations provided by state law, 18 years in our case. See Colo. Rev. State. sec. 38-41-101 (1973). See also McNellis v. Raymond,287 F. Supp. 232, 237 (N.D. N.Y. 1968) and cases cited therein. Furthermore, we note that since the transfer in question was between husband and wife, petitioners before the burden of proof in the state court action to show the conveyance was not fraudulent. See Gutheil v. Polichio,103 Colo. 426, 86 P. 2d 972, 974 (1939); Chalupa v. Preston,65 Colo. 400, 177 P. 965 (1918); Helm v. Brewster,42 Colo. 25, 93 P. 1101↩ (1908). 9. Although the deed evidencing this transfer is titled in Mr. Bergman's individual name, a reading of the record as a whole clearly supports and we have no difficulty in drawing the inference that such transfer was actually intended to be to Mr. Bergman in his fiduciary capacity as debtor-in-possession under his Chapter XI petition. ↩
10. The filing of the petition under Chapter XI did not serve to create a new bankruptcy estate consisting of Mr. Bergman's property as of this latter date, but instead related back to the date Mr. Bergman's original bankruptcy petition was filed. See Rule 11-4, Rules of Bankruptcy Procedure. Nor does the intervention of Mr. Bergman's Chapter XI petition preclude a finding that the transfer was made to the bankruptcy estate created by the petition under Chapters I-VII of the Bankruptcy Act. See discussion in the text below.↩
11. On the basis of an entry made by the Boulder Standards Federal Credit Union on its records, petitioners argue that Mr. Bergman personally made the payment of the real estate taxes and mortgage interest. That credit union record does not so establish, legally or factually. As to the legal fees, there is no dispute that they were paid by the trustee in bankruptcy and were paid out of the "net proceeds" of the sale (after payment to the credit union and after payment of various expenses). Petitioners have never suggested that the "net proceeds" of the sale, which were deposited into the account of the Bankruptcy Court, were outside of the bankruptcy estate.↩
12. While there are cases reaching a contrary conclusion (see In re Siehl, 37 AFTR 2d par. 7-791, 76-1 USTC par. 9217 (S.D.Ohio 1975), the Tax Court position represents what has generally been considered to be the law in that regard. See Rev. Rul. 72-387, 1972-2 C.B. 632; S. Rept. 96-1035, 1980-2 C.B. 620, 632-633. During the year at issue herein, the Internal Revenue Code of 1954 contained no specific provisions concerning the allocation of deductions between the bankrupt and the bankruptcy estate. This omission has now been remedied in the case of individual taxpayers by the enactment of Code sections 1398-1399, added by section (3)(a)(1) of the Bankruptcy Tax Act of 1980, 94 Stat. 3389, 3397-3400; 1980-2 C.B. 607↩, 611-613, applicable to bankruptcy cases commencing on or after March 25, 1981. Those provisions codified what Congress considered to be the existing law in regard to individual bankrupt-taxpayers, i.e. the Tax Court position.
13. Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F. 2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940↩ (1971). 14. Barring stipulation to the contrary, any appeal in the present case would lie to the Court of Appeals for the Tenth Circuit. Accordingly, we need not decide whether we agree with the Fifth Circuit's Mueller opinion. Since, in our view, the Fifth Circuit did not address the issue of the bankruptcy estate of an individual as a separate taxable entity, we think we would not be compelled to follow the Fifth Circuit's Mueller opinion under our Golsen rule. See n. 13, supra.↩
15. Cf. Cruz v. Hauck,404 U.S. 59, 62-65↩ (1971) (Douglas, J., concurring opinion).